IN THE CIRCUIT COURT OF THE FIFTH
JUDICIAL CIRCUIT, IN AND FOR
MARION COUNTY, FLORIDA

CASE NO.: *12-3172-CAB*

DIVISION: *Circuit Civil*

GLEN CASEY, a natural person,

                    Plaintiff,

v.

STONEBRIDGE LIFE INSURANCE
COMPANY, a foreign for profit
Corporation registered to do business in
Florida.

                    Defendant.

_____/

## COMPLAINT
### (and Demand for Jury Trial)

Plaintiff, GLEN CASEY (hereafter, "CASEY"), by and through his undersigned attorney,

hereby sues defendant STONEBRIDGE LIFE INSURANCE COMPANY (hereafter,

"STONEBRIDGE"), and alleges:

## JURISDICTIONAL ALLEGATIONS

1. This is an action for damages in excess of $15,000.00 exclusive of interest and costs.

2. The insurance contract that is the subject of this lawsuit, insured a Florida resident,

    Edward M. Casey, who resided in Ocala, Florida.

CASEY v. STONEBRIDGE
Complaint Page 1 of 9.

3.  Plaintiff, GLEN CASEY, is the beneficiary of the insurance policy that is the subject of this lawsuit because he is the sole living child of the unmarried insured.

4.  Defendant, at all times herein, is a Vermont, and then thereafter, an Iowa Corporation with its principal offices in Baltimore, Maryland and thereafter Cedar Rapids, Iowa.

5.  Defendant, at all times herein, is registered with the Florida Division of Corporations as a Foreign Corporation doing business in Florida.

6.  Defendant, at all times herein, was conducting business in the State of Florida.

7.  Defendant is subject to the long-arm statute of this state pursuant to section 48.193, Florida Statutes, by reason of the following:

    a.  Stonebridge operated, conducted, engaged in and/or carried on business or a business venture in this state or had an office or agency in this state (Section 48.193(a), Florida Statutes); and

    b.  Stonebridge engaged in substantial and not isolated activity within this state (section 48.193(2), Florida Statutes).

8.  Venue of this proceeding is proper in this Court.

## GENERAL ALLEGATIONS

9.  At all times herein, defendant Stonebridge was an "authorized" insurer' as defined in Section 624.09(1), Florida Statutes.

10. Stonebridge issued to CITIBANK (South Dakota) NA, its legal predecessors or assigns, an accidental death and dismemberment policy on April 3, 1996, Policy number 25494

GC303 ("Subject Policy 1"). A true and correct copy of the subject policy is attached hereto as (Exhibit 1).

11. Subject Policy 1 insured Edward M. Casey for up to $125,000.00 in the event of an accidental death in private passenger automobile and land motor vehicle.

12. Stonebridge issued to DISCOVER BANK, its legal predecessors or assigns, an accidental death and dismemberment policy on January 15, 1999, Policy number 25467 GC346 ("Subject Policy 2"). A true and correct copy of the subject policy is attached hereto as (Exhibit 2).

13. Subject Policy 2 insured Edward M. Casey for up to $100,000.00 in the event of an accidental death in private passenger automobile and land motor vehicle.

14. Subject Policy 1 and 2 were in full force and effect at all times relevant herein.

15. Edward M. Casey was an "Insured" as defined under the Subject Policy 1 and 2.

16. Edward M. Casey was a "Covered Person" under the Subject Policy 1 and 2.

17. Edward M. Casey was involved in a motor vehicle accident on August 3, 2011. (Hereafter, "the accident.")

18. Edward M. died on August 3, 2011.

19. The cause of death of Edward M. Casey was blunt force trauma from the auto accident.

20. Such accidental death was covered by and within the terms of the Subject Policy 1 and subject Policy 2.

21. Edward M. Casey sustained an "Injury" under the Subject Policy 1 and 2.

22. Edward M. Casey sustained an "Injury" under the Subject Policy 1 and 2.

23. Edward M. Casey sustained a "Loss" under the Subject Policy 1 and 2.

CASEY v. STONEBRIDGE
Complaint Page 3 of 9.

24. Edward M. Casey was "Occupying" a vehicle as defined in Subject Policy 1 and 2 at the time of the time of the accident.

25. Edward M. Casey was occupying a "Private Passenger Automobile" as defined in Subject Policy 1 and 2 at the time of the time of the accident.

26. The subject policies 1 and 2 do not define "disease; bodily or mental infirmity; or medical or surgical treatment of these."

27. The terms in Subject Policy 1 and Subject Policy 2, "disease," "bodily or mental infirmity," and/or "medical treatment of these" are ambiguous.

28. Subject Policy 2 does not define "does not directly and independently of all other causes."

29. The term "does not directly and independently of all other causes" is ambiguous.

30. Stonebridge has a duty to deal fairly and in good faith with its policy holders.

31. Stonebridge must treat its policyholders with equal regard as it does its own interests.

32. Stonebridge has a duty to act reasonably and fairly in interpreting and applying its policy provisions.

33. Stonebridge should make claims decisions without effect upon company profitability.

34. Stonebridge must fairly, reasonably and fully investigate the claim giving rise to the lawsuit.

35. Stonebridge must fairly, reasonably and promptly evaluate the claim giving rise to the lawsuit.

CASEY v. STONEBRIDGE
Complaint Page 4 of 9.

36. Stonebridge has a duty to not ignore evidence which supports coverage.

37. Stonebridge has a duty to not interpret the provisions of its contract unreasonably.

38. It is not appropriate for Stonebridge to use biased consultants to assist in the investigation and/or evaluation of this claim.

39. Stonebridge's failure to fairly and reasonably investigate a claim does not permit the company to deny the claim due to lack of information or one-sided information.

40. Stonebridge's denial of a claim should never be based upon speculation.

41. Documents should not be destroyed by Stonebridge to hide the company's policies or claims handling from its policyholders.

42. The subject policy's exclusions are to be interpreted narrowly.

43. The subject policy's insuring agreements are to be interpreted broadly.

44. Stonebridge must resolve doubts concerning coverage in favor of the policyholder.

45. Policy language should be given its plain, ordinary and popular meaning.

46. Ambiguous policy provisions should be interpreted against Stonebridge and in favor of coverage.

47. Stonebridge has the burden of proving the application of an excluded peril.

48. When adjusting claims originating from the State of Florida, Stonebridge is required to comply with all applicable provisions of Florida Statutes §626.9541 and §624.155.

49. Page (6) of Subject Policy 1 provides in part:

CASEY v. STONEBRIDGE

Complaint Page 5 of 9.

ENTIRE CONTRACT

"The Policy and any attachments are the entire contract of insurance."

50. Page (5) of Subject Policy 2 provides in part:

ENTIRE CONTRACT

"The Policy and any attachments form the entire contract of insurance. No agent may change or waive any provisions of the Policy under which this coverage is provided."

51. On or about December, 2011, plaintiff made a timely claim for the full benefits amounts as a beneficiary of the Subject Policy 1 and Policy 2.

52. On or about January 31, 2012, defendant denied benefits and plaintiff's claim for benefits as a beneficiary. Such denial is attached as (Exhibit 3).

53. On or about May 10, 2012, Plaintiff filed, as a required condition precedent under Florida Statutes Section 624.155(3)(a)-(b), a complete Form DFS-10-363 (Rev. 11/2007) *Civil Remedy Notice* was filed with the Florida Department of Financial Services for both Subject Policy 1 and Policy 2. A true and correct copy of the same is attached hereto as (Exhibit 4.)

54. On or about May 15, 2012, pursuant to Section 624.155(3)(a), Florida Statutes, a true and correct copy of the Civil Remedy Notice described above and attached hereto was delivered upon defendant via USPS Registered Mail, Return Receipt Requested. A true and correct copy of the USPS proof of delivery "green card' is attached hereto as (Exhibit 5).

55. As of this date, defendant Stonebridge has not paid any benefits of Subject Policy 1 or

Subject Policy 2 to the Plaintiff CASEY.

## COUNT I

### SECTION 624.155, FLORIDA STATUTES
### CIVIL REMEDY FOR DENIAL OF INSURANCE CLAIM
### SUBJECT POLICY 1

This is an action for damages under Section 624.155, Florida Statutes.

56. Plaintiff realleges the above-numbered paragraphs and incorporates them herein.

57. That the defendant Insurer, under 624.155(1)(b)(1), has not attempted in good faith to

settle claims when, under all the circumstances, it could and should have done so, had it

acted fairly and honestly toward its insured and with due regard for her or his interests.

58. That Stephen Fulton Shaw, Attorney, has been retained by plaintiff CASEY and plaintiff

has agreed to pay Stephen Fulton Shaw, Attorney, reasonable attorney fees for his

services applicable and relevant to this action.

WHEREFORE, Plaintiff hereby demands judgment under Section 624.155, Florida Statutes,

and the amount of $125,000.00 in insurance proceeds for **Subject Policy 1**, along with all other

damages and relief this Court sees just and proper and attorney's fees.

## COUNT II

### SECTION 624.155, FLORIDA STATUTES
### CIVIL REMEDY FOR DENIAL OF INSURANCE CLAIM
### SUBJECT POLICY 2

This is an action for damages under Section 624.155, Florida Statutes.

59. Plaintiff realleges the above-numbered paragraphs and incorporates them herein.

CASEY v. STONEBRIDGE
Complaint Page 7 of 9.

60. That the defendant Insurer, under 624.155(1)(b)(1), has not attempted in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.

61. That Stephen Fulton Shaw, Attorney, has been retained by plaintiff CASEY and plaintiff has agreed to pay Stephen Fulton Shaw, Attorney, reasonable attorney fees for his services applicable and relevant to this action.

WHEREFORE, Plaintiff hereby demands judgment under Section 624.155, Florida Statutes, and the amount of $100,000.00 in insurance proceeds for **Subject Policy 2**, along with all other damages and relief this Court sees just and proper and attorney's fees.

## COUNT III

### BREACH OF CONTRACT
### SUBJECT POLICY 1 and SUBJECT POLICY 2

This is an action for breach of contract under Subject Policy 1 and Subject Policy 2.

62. Plaintiff realleges the above-numbered paragraphs and incorporates them herein.

63. Every condition precedent to bringing this claim has been performed by Plaintiff CASEY.

64. That the defendant Insurer entered into an insurance policy contract with the insured and the beneficiary CASEY to provide insurance benefits proceeds to the "Beneficary" Plaintiff CASEY, in the event of the accidental death of the insured EDWARD M. CASEY.

65. That the defendant has a duty to pay the Plaintiff CASEY the policy benefits.

66. That the defendant has failed to perform its duty to pay the policy benefits to the

   Beneficiary CASEY.

67. That as a result of defendant's failure to perform its' duty to pay Beneficiary CASEY his

   due benefits, CASEY has suffered damages.

**WHEREFORE,** Plaintiff hereby demands judgment in the amount of $125,000.00 for Subject

Policy 1 and $100,000.00 for Subject Policy 2, along with all other damages and relief this Court

sees just and proper.

   Plaintiff demands **TRIAL** by **JURY.**

                                        _____
                                        Stephen Fulton Shaw, Attorney
                                        P.O. Box 1241
                                        Silver Springs, FL  34489
                                        (352) 694-5245
                                        FL Bar # 128661
                                        Email: Steve@ShawLegalFirm.com
                                              Attorney for Plaintiff CASEY

# Stonebridge Life Insurance Company

**A STOCK COMPANY**
Home Office:  Rutland, Vermont
Administrative Office: 2700 West Plano Parkway
Plano, Texas 75075

# CERTIFICATE OF INSURANCE

Person(s) Insured and Schedule of Insurance are shown on the Schedule Page.  Place the Schedule Page with your Certificate for safekeeping.

Stonebridge Life Insurance Company  (herein called "we," "us" or "our") has issued Policy No. 25494  GC303to CITIBANK (SOUTH DAKOTA), N.A. _____ (herein called Policyholder) which makes available accidental death and dismemberment insurance for eligible persons.

We agree to pay the benefits herein provided with respect to the person(s) insured hereunder, subject to all terms of the Policy.

**RIGHT TO EXAMINE CERTIFICATE**

If you are not satisfied with this insurance, you may void it by returning this Certificate within 90 days after you receive it to our Administrative Office.  You will receive a full refund of any premium you have paid.

This Certificate supersedes any Certificate previously issued to you under the Policy.  You and any Covered Person may qualify under one Certificate only.  If any person is insured under more than one Certificate, we will consider that person to be insured under the Certificate which provides the greatest amount of coverage.  Upon discovery of the duplication, we will refund any duplicated payments which may have been made on behalf of that person.  The records maintained by the Policyholder shall determine the insurance provided under the Policy for any insured.  Important provisions of the Policy are outlined below.

Craig D. Vroman

Secretary

President

**INSURED:**

EDWARD M CASEY
5608 SW 57TH ST
OCALA FL 34474-7818

**CERTIFICATE NUMBER: 84AW475129**



EXHIBIT

1

THE BENEFITS OF THE POLICY PROVIDING YOUR COVERAGE ARE
GOVERNED PRIMARILY BY THE LAW OF A STATE OTHER THAN FLORIDA.

**GROUP ACCIDENT INSURANCE**
**PROVIDING ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS**

# STONEBRIDGE LIFE INSURANCE COMPANY

## SCHEDULE PAGE

This Schedule Page is part of your Certificate.  It supersedes any Schedule Page issued under Master Policy No. 25494   GC303  bearing an earlier Effective Date.

CERTIFICATE NUMBER: 84AW475129                    EFFECTIVE DATE:  04-03-96

MONTHLY PREMIUM:    $7.95

INSURED:  EDWARD M CASEY

FAMILY COVERAGE: NO

PREMIUM CONTRIBUTION: 100% AFTER THE FIRST 3 MONTHS

TO PRESENT INQUIRIES, OBTAIN INFORMATION ABOUT COVERAGE, OR RECEIVE ASSISTANCE IN RESOLVING COMPLAINTS, CALL 1-888-527-8808 .

## SCHEDULE OF INSURANCE

| PRINCIPAL SUMS FOR LOSS UNDER: | INSURED | OPTIONAL FAMILY COVERAGE | |
|---|---|---|---|
| | | SPOUSE | EACH CHILD |
| PART I COMMON CARRIER | $1,000,000 | NIL | NIL |
| PART II PRIVATE PASSENGER AUTOMOBILE AND LAND MOTOR VEHICLE ACCIDENTS. | $125,000 | NIL | NIL |
| PART III ALL OTHER INJURIES | $55,000 | NIL | NIL |

Visit us online at www.stonebridgeinsurance.com

PAGE 2

## DEFINITIONS

**INSURED** (herein called "you," "your," or "yours") means you, the Insured named on the Schedule Page, provided coverage has become effective.

**COVERED PERSON** means you and the following persons, provided coverage has become effective:

1. your spouse; and
2. each of your children (including step-children, children born to or legally adopted, or children in the waiting period prior to finalization of proposed adoption by either you or your spouse) 18 years of age or younger, unmarried and dependent upon you for support and maintenance.

**INJURY** means bodily injury caused by an accident occurring while the insurance is in force resulting:

1. directly and independently of all other causes; and
2. within 90 days after the date of the accident. Loss commencing more than 90 days after the date of the accident will be considered a sickness.

**INJURED** means having suffered an injury.

**LOSS** means:

1. Loss of Life;
2. With reference to hand or foot, complete severance through or above the wrist or ankle joint;
3. With reference to eyes, the irrecoverable loss of the entire sight thereof.

Loss does not mean loss of use.

**OCCUPYING** means in direct physical contact with the vehicle at the time of the accident.

**PRIVATE PASSENGER AUTOMOBILE** means a four wheel automobile which is not licensed to carry passengers for hire and which is of the pleasure, station wagon, van, jeep, or truck type with a factory rating load capacity of 2,000 pounds or less. Also included are all self-propelled motor home type vehicles of four wheels or more and recreational vehicles.

**LAND MOTOR VEHICLE** includes any gasoline, diesel, or similarly powered vehicle customarily used for transportation on land and for which the operator is required by law to be licensed. This category includes, but is not limited to, those vehicles considered "Private Passenger Automobiles" by this Certificate. Also included are two-wheeled vehicles (motorcycles, motorscooters) and vehicles with more than four wheels (tractor/trailer rigs, flat bed trucks). Farm equipment and forklifts are specifically excluded.

**COMMON CARRIER** means an air, land, or water conveyance operated under a license for regularly scheduled passenger service.

## WHEN YOUR INSURANCE BEGINS

You shall not have coverage unless an enrollment form, if required, and premium have been received by us. Your coverage will become effective on the Certificate Effective Date shown on the Schedule Page provided we receive the initial premium within 21 days of the Certificate Effective Date and while you are alive. Certificate Anniversaries shall be measured annually from the Certificate Effective Date.

## WHEN YOUR INSURANCE ENDS

Your insurance ends on the last day of the period covered by your last premium contribution.

GC303 PAGE 3

## COVERAGE

### PART I - BENEFIT FOR TRAVEL BY COMMON CARRIER

If a Covered Person is Injured while Occupying, as a fare-paying passenger, a public conveyance provided and operated by a duly licensed Common Carrier for regular passenger service by land, water, or air, we will pay the applicable benefit specified in Part I of the Schedule of Insurance for the appropriate Loss as shown in the Schedule of Losses and Benefits below. A passenger on a school bus is considered to be a passenger of a public conveyance provided and operated by a duly licensed Common Carrier.

### PART II - BENEFIT FOR TRAVEL BY PRIVATE PASSENGER AUTOMOBILE AND LAND MOTOR VEHICLE ACCIDENTS

If a Covered Person is Injured:

1. in consequence of Occupying a Private Passenger Automobile;
2. by being struck by a Land Motor Vehicle; or
3. while driving for hire a Land Motor Vehicle,

we will pay the applicable benefit specified in Part II of the Schedule of Insurance for the appropriate Loss as shown in the Schedule of Losses and Benefits below.

### PART III - BENEFIT FOR ALL OTHER INJURIES RESULTING IN A LOSS

If a Covered Person is:

1. Injured in an accident not covered under Part I or Part II; and
2. not otherwise excluded in the Policy, we will pay the applicable benefit specified in Part III of the Schedule of Insurance for the appropriate Loss as shown in the Schedule of Losses and Benefits below.

## SCHEDULE OF BENEFITS

### ACCIDENTAL DEATH AND DISMEMBERMENT

If, as a result of Injury occurring under any of the circumstances listed in the Coverage section above, a Covered Person suffers any of the following Losses within 90 days after the date of an accident which caused such Injury, then we will pay the benefit as shown below:

| SCHEDULE OF LOSSES AND BENEFITS UNDER PART I, PART II, AND PART III | |
|---|---|
| **LOSS** | **BENEFIT** |
| LIFE | THE PRINCIPAL SUM |
| Both Hands or Both Feet or Sight of Both Eyes | The Principal Sum |
| One Hand and One Foot | The Principal Sum |
| One Hand and Sight of One Eye | The Principal Sum |
| One Foot and Sight of One Eye | The Principal Sum |
| One Hand or One Foot or Sight of One Eye | One-Half the Principal Sum |

Principal Sums for each Covered Person are as specified on the Schedule Page. Only one of the above benefits, the largest, will be paid for Injuries that result from one accident for each Covered Person.

"Loss" as used above means Loss of Life. Loss, with reference to hand or foot, means complete severance through or above the wrist or ankle joint. Loss, as used with reference to eyes, means the irrecoverable loss of the entire sight thereof. Loss does not mean loss of use.

Indemnity provided under the Policy will be paid for the greatest Loss and in no event for more than one of the Losses sustained by the Covered Person as the result of any one accident.

## EXCLUSIONS

No benefit shall be paid for Loss or Injury that:

1. is intentionally self-inflicted, while sane or insane;
2. is due to a war or act of war, whether declared or not;
3. is caused by or resulting from the use or taking of any narcotic, barbiturate or any other drug by the Covered Person unless taken or used as prescribed by a physician;
4. occurs while the Covered Person's blood alcohol level is .10 percent weight by volume or higher;
5. occurs while the Covered Person is acting as a pilot or crew member in any aircraft or while a passenger other than a fare-paying passenger in any aircraft;
6. occurs while committing or attempting to commit an assault or felony; or
7. is due to disease; bodily or mental infirmity; or medical or surgical treatment of these.

## RENEWAL CONDITIONS

You may keep this Certificate in force for as long as you live. We do not have the right to:

1. cancel your coverage; or
2. place any restriction on your coverage while it is in force; or
3. refuse a premium paid on or before the date due or within the Grace Period.

Renewal premiums may not be increased.

When a person is added or dropped, the premium may change for due dates after the change is made. Renewal premiums are due on the first day of each renewal period. Your coverage will expire if the premium is not paid by the end of the Grace Period.

You may cancel your coverage upon notice to us. Notice is deemed to be due or given when made in writing or communicated verbally by telephone or in person or by any other means acceptable to the Company.

## BENEFICIARY

Unless you specify otherwise, any amount due for Loss of Life will be paid as follows:

1. At your death, it will be paid to your spouse if living; otherwise equally to your then living lawful children, if any, (including stepchildren and adopted children); otherwise equally to your then living parents or parent; otherwise to your Estate.
2. At the death of any other Covered Person, it will be paid to you, if living; otherwise, as though it were payable under (1) above.

Any payment made under this section will fully release the Company to the extent of the payment. The beneficiaries designated may be changed in accordance with the Change of Beneficiary Provision subject to the Community Property laws in your state of residence.

## CONTINUATION OF COVERAGE

In the event of your death, your covered spouse, if any, shall be deemed the insured.  Otherwise the coverage will terminate on the next renewal date.  If your spouse ceases to be your spouse, your spouse will no longer be covered as of the next renewal date.

Coverage for any dependent child insured under this Certificate shall terminate as of the next renewal date after the child's marriage or 19th birthday.

A child may continue to be covered if upon reaching age 19 the child is, and continues thereafter to be, both:

1.  incapable of self-sustaining employment by reason of mental retardation or physical handicap; and
2.  chiefly dependent upon you for support and maintenance.

A child may continue to be covered until age 23 if the child is:

1.  a full-time student; and
2.  dependent upon the insured for support and maintenance.

When a Covered Person is dropped from coverage, it does not affect any claim for a Loss which began while the coverage was in force.

## CONVERSION

The covered child or spouse whose coverage ceases may apply for his or her own Certificate within 31 days after coverage ceases.  No evidence of insurability will be required.  The new Certificate will be issued:

1.  on our form at that time with benefits most like but not greater than those of the Certificate; and
2.  at the adult rate for the attained age of the person at that time.

The Effective Date of coverage under the new Certificate will be the same as the Effective Date of coverage under this Certificate.  We will not pay under the new Certificate for any injury for which benefits have been paid under this Certificate.

## NEWBORN CHILDREN

A child born to you while your Certificate is in force will be covered from the time of birth.  You must write and tell us of the birth of a child.

If any children are already covered under this Certificate, the benefit amount will be the same as for other children.  If no other child is covered under this Certificate, the benefit will be the amount which would have been issued to children as of the Effective Date of the Certificate.

## GENERAL PROVISIONS

### ENTIRE CONTRACT

Your Certificate is furnished in accordance with and subject to the terms of the Policy.  It is not part of the Policy but evidence of the insurance provided under the Policy.  The Policy and any attachments are the entire contract of insurance.

## CHANGE OF BENEFICIARY

You may change the beneficiary at any time by writing to us at 2700 West Plano Parkway, Plano, Texas 75075 or the Policyholder.  Once we record the change, it will take effect as of the day the request was signed, subject to any claim payment made before such recording.  The consent of the beneficiary is not needed for the change unless the beneficiary designation was irrevocable.

## PAYMENT OF PREMIUM

All premiums due by the terms of the Policy shall be paid by the Policyholder to our Administrative Office on or prior to the day they are due.

For the first three months of coverage, the premium will be paid by the Policyholder.

You are required to contribute 100 percent of the premium payable under your Certificate after the first three months.  If at any time the Policyholder refuses to accept such contributions and pay the premium for you, you may pay such premium directly to the Administrative Office of the Company on or prior to the day it is due.

## GRACE PERIOD

If a premium is not paid when due, the insurance shall be in default.  We will allow a 31 day Grace Period to pay each premium after the first one.  If a premium is not paid at the end of the Grace Period, the insurance shall terminate.

## NOTICE OF CLAIM

Written Notice of Claim must be given to us within 30 days after it occurs or as soon as possible.  You may give the notice or may have someone do it for you.  The notice should give your name and Certificate number as shown on the Schedule Page.  Notice should be mailed to the Company at P.O. Box 869090, Plano, Texas 75086-9916.

## REINSTATEMENT

Your Certificate will lapse if you do not pay your premium before the end of the Grace Period.  If we later accept a premium and do not require an application for reinstatement, that payment will put the Certificate back in force.  If we require an application for reinstatement, this Certificate will be put back in force when we approve it.  If we do not approve it, the Certificate will be put back in force on the 45th day after the date of application for reinstatement, unless we give you prior written notice of its disapproval.

The reinstated Certificate only covers Loss due to an Injury that is received after the date of reinstatement. In all other respects you and we have the same rights under the Certificate as were in effect before it lapsed, unless special conditions are added in connection with the reinstatement.

## CLAIM FORMS

When we receive Notice of Claim, we will send the claimant forms for filing Proof of Loss.  If we do not send them within 15 days, the claimant can meet the Proof of Loss requirement by giving us a written statement of what happened.  We must receive this statement within the time given for filing Proof of Loss.

**PROOF OF LOSS**

Written Proof of Loss must be given to us within 90 days after the date of the Loss or as soon as possible. Proof must, however, be furnished no later than one year from the time it is otherwise required, except in the absence of legal capacity.

**MISSTATEMENT OF AGE**

If the age of a Covered Person has been misstated, all amounts payable shall be in the amount the premium paid would have bought for the correct age. If, as a result of misstatement, we accept a premium for any period when coverage would not normally have been in effect, then our liability for such period shall be a refund, upon request, of all premiums paid for such period.

**TIME OF PAYMENT OF CLAIMS**

We will pay all benefits covered by the Policy as soon as we receive proper written Proof of Loss sufficient to determine liability.

**PAYMENT OF CLAIMS**

Loss of life benefits are payable in accordance with the beneficiary designation in effect at the time of payment. Other benefits will be paid to you. Any other benefits, other than for loss of life, unpaid at your death may be paid, at our option, either to your beneficiary or estate.

**PHYSICAL EXAM AND AUTOPSY**

At our expense, we shall have the right to examine the Covered Person when and as often as is reasonable while a claim is pending. We may also have an autopsy done in case of death where it is not forbidden by law.

**LEGAL ACTIONS**

No action can be brought to recover on this Certificate for at least 60 days after written Proof of Loss has been furnished. No such action shall be brought more than 3 years after the date proof of loss is required.

# STONEBRIDGE LIFE INSURANCE COMPANY

2700 West Plano Parkway, Plano, Texas 75075-8200

## ENDORSEMENT

Stonebridge Life Insurance Company has issued this Endorsement as a part of the Policy, Certificate or Rider to which it is attached. This Endorsement takes effect and expires concurrently with the monthly renewal date of the Policy, Certificate or Rider to which it is attached. This Endorsement is subject to all of the contract provisions that are not in conflict herewith.

Under the heading **EXCLUSIONS** the alcohol exclusion has been deleted and replaced with:

(Injury that) is sustained or contracted in consequence of the Covered Person being Intoxicated;

Under the heading **DEFINITIONS** the following definition has been added or deleted and replaced with:

**INTOXICATED** means, for purposes of this coverage, having a blood alcohol level of .10 percent weight by volume or higher.

The Stonebridge Life Insurance Company has caused this Endorsement to be signed by its Secretary and its President.

_____                        _____
Secretary                                       President

END ALEXCL

## NOTICE TO FLORIDA RESIDENTS

Should you wish to obtain information about your coverage, need assistance in resolving a complaint, or have any other inquiries, please contact the Company at 1-888-527-6808 .

CMPLT FL

# Stonebridge Life Insurance Company

**A STOCK COMPANY**
Home Office: Rutland, Vermont
Administrative Office: 2700 West Plano Parkway
Plano, Texas 75075

# CERTIFICATE OF INSURANCE

Person(s) insured and Schedule of Insurance are shown on the Schedule Page. Place the Schedule Page with your Certificate for safekeeping.

Stonebridge Life Insurance Company (herein called "we," "us" or "our") has issued Policy No. 25487   GC348 to DISCOVER BANK
(herein called Policyholder) which makes available accidental death and dismemberment insurance for eligible persons.

We agree to pay the benefits herein provided with respect to the person(s) insured hereunder, subject to all terms of the Policy.

**RIGHT TO EXAMINE CERTIFICATE**

If you are not satisfied with this insurance, you may void it by returning this Certificate within 30 days after you receive it to our Administrative Office. You will receive a full refund of any premium you have paid.

This Certificate supersedes any Certificate previously issued to you under the Policy. You and any Covered Person may qualify under one Certificate only. If any person is insured under more than one Certificate, we will consider that person to be insured under the Certificate which provides the greatest amount of coverage. Upon discovery of the duplication, we will refund any duplicated payments which may have been made on behalf of that person. The records maintained by the Policyholder shall determine the insurance provided under the Policy for any Insured. Important provisions of the Policy are outlined below.

_Craig D. Vermie_
Secretary

_[signature]_
President

**INSURED:**

EDWARD M CASEY
5608 SW 57TH ST
OCALA FL 34474-7618

**CERTIFICATE NUMBER: 86AK8J0892**

EXHIBIT
2

THE BENEFITS OF THE POLICY PROVIDING YOUR COVERAGE ARE GOVERNED PRIMARILY BY THE LAW OF A STATE OTHER THAN FLORIDA

**GROUP ACCIDENT INSURANCE**
**PROVIDING ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS**

## DEFINITIONS

**INSURED** (herein called "you," "your," or "yours") means you, the insured named on the Schedule Page, provided coverage has become effective.

**COVERED PERSON** means, for coverage purposes only, you and the following persons, provided coverage has become effective:

1. your spouse; and
2. each of your children (including step-children, children born to or legally adopted, or children in the waiting period prior to finalization of proposed adoption by either you or your spouse) 18 years of age or younger and dependent upon you for support and maintenance; and
3. your child 19 years of age but less than 26 years of age if the child is:
   a. living in your household or is a full-time or part-time student; and
   b. dependent upon you for support and maintenance.

**INJURY** means bodily injury which:

1. is caused by an accident which occurs while this insurance is in force under the Policy; and
2. results in Loss covered by the Policy; and
3. creates a Loss due, directly and independently of all other causes, to such accidental bodily injury.

**INJURED** means having suffered an Injury.

**LOSS** means:

1. Loss of Life;
2. with reference to hand or foot, complete severance at or above the wrist or ankle joint;
3. with reference to eye, the total and irrecoverable loss of the entire sight thereof.

Loss does not mean loss of use.

**PRIVATE PASSENGER AUTOMOBILE** means a four-wheeled automobile which is not licensed to carry passengers for hire and which is of the pleasure type, including a station wagon, van, jeep, or truck type with a factory rating load capacity of 2,000 pounds or less or self-propelled motor home type vehicles.

Farm equipment and forklifts are specifically excluded under Private Passenger Automobile.

**LAND MOTOR VEHICLE** includes any gasoline, diesel, or similarly powered vehicle customarily used for transportation on land and for which the operator is required to be licensed.

This category includes, but is not limited to the following:

1. vehicles considered "Private Passenger Automobiles" by the Policy; and
2. two-wheeled vehicles such as motorcycles and motorscooters; and
3. vehicles with more than four wheels, such as tractor/trailer rigs and flat bed trucks.

Farm equipment and forklifts are specifically excluded under Land Motor Vehicle.

**COMMON CARRIER** means an air, land, or water public conveyance operated under a license for regularly scheduled passenger service.

## WHEN YOUR INSURANCE BEGINS

You shall not have coverage unless an enrollment form, if required, and premium have been received and approved by us. Your coverage will become effective on the Certificate Effective Date shown on the Schedule Page, provided we receive the initial premium within 21 days of the Certificate Effective Date and while you are alive. Certificate anniversaries shall be measured annually from the Certificate Effective Date.

## WHEN YOUR INSURANCE ENDS

Your insurance ends on the last day of the period covered by your last premium contribution.

## COVERAGE

### PART I - BENEFIT FOR TRAVEL BY COMMON CARRIER

If a Covered Person is injured as a direct result of a collision, crash or sinking of a duly licensed Common Carrier while riding as a fare-paying passenger inside such Common Carrier, we will pay the applicable benefit listed in Part I of the Schedule of Insurance for the appropriate Loss as shown in the Schedule of Losses and Benefits below.

### PART II - BENEFIT FOR TRAVEL BY PRIVATE PASSENGER AUTOMOBILE AND LAND MOTOR VEHICLE ACCIDENTS

If a Covered Person is injured:

1. by being struck by a Private Passenger Automobile; or
2. as a direct result of a collision or crash of a private Passenger Automobile; or
3. by being struck by a Land Motor Vehicle; or
4. while driving for hire a Land Motor Vehicle,

we will pay the applicable benefit specified in Part II of the Schedule of Insurance for the appropriate Loss as shown in the Schedule of Losses and Benefits below.  As used in the Policy, driving for hire a Land Motor Vehicle means operating for hire the Land Motor Vehicle as its driver while inside such Land Motor Vehicle and while such Land Motor Vehicle is moving under its own power.

### PART III - BENEFIT FOR ALL OTHER INJURIES RESULTING IN A LOSS

If a Covered Person is injured in an accident not covered under Part I or Part II and not otherwise excluded in the Policy, we will pay the applicable benefit specified in Part III of the Schedule of Insurance for the appropriate Loss as shown in the Schedule of Losses and Benefits below.

## SCHEDULE OF BENEFITS

### ACCIDENTAL DEATH AND DISMEMBERMENT

If, as a result of Injury occurring under any of the circumstances listed in the Coverage section above, and not otherwise excluded, a Covered Person suffers any of the following Losses within 90 days after the date of an accident which caused such Injury, we will pay the benefit shown below:

| SCHEDULE OF LOSSES AND BENEFITS UNDER PART I, PART II, AND PART III | |
|---|---|
| LOSS | BENEFIT |
| LIFE | THE PRINCIPAL SUM |
| Both Hands or Both Feet or Sight of Both Eyes | The Principal Sum |
| One Hand and One Foot | The Principal Sum |
| One Hand and Sight of One Eye | The Principal Sum |
| One Foot and Sight of One Eye | The Principal Sum |
| One Hand or One Foot or Sight of One Eye | One-Half the Principal Sum |

Principal Sums for each Covered Person are as specified on the Schedule Page.  Only one of the above benefits, the largest, will be paid for multiple Losses that result from one accident for each Covered Person.

"Loss" as used above with reference to hand or foot means complete severance at or above the wrist or ankle joint; and as used with reference to eye means the total and irrecoverable loss of the entire sight thereof.

Loss does not mean loss of use.

GC346                                    PAGE 3

## EXCLUSIONS

No benefit shall be paid for injury that:

1. is intentionally self-inflicted, while sane or insane;
2. is due to a war or act of war, whether declared or not;
3. occurs while the Covered Person is taking or using any narcotic, barbiturate or any other drug, unless taken or used as prescribed by a Physician;
4. occurs while the Covered Person's blood alcohol level is .10 percent weight by volume or higher;
5. occurs while the Covered Person is acting either as a pilot or crew member or while a passenger, other than a fare-paying passenger, in any aircraft;
6. occurs while the Covered Person is committing or attempting to commit an assault or felony;
7. is due to disease, bodily or mental infirmity, or medical or surgical treatment of these; or
8. does not directly and independently of all other causes create a Loss.

## RENEWAL CONDITIONS

You may keep this Certificate in force for as long as you live.  We do not have the right to:

1. cancel your coverage; or
2. place any restriction on your coverage while it is in force; or
3. refuse a premium paid on or before the date due or within the Grace Period.

Renewal premiums may not be increased.

When a person is added to or dropped from coverage, the premium amount due as of the next premium due date may be adjusted to reflect the change in coverage.  Renewal premiums are due on the first day of each renewal period.  Your coverage will expire if the premium is not paid by the end of the Grace Period.

You may cancel your coverage upon notice to us.  Notice is deemed to be due or given when made in writing, communicated verbally by telephone or in person, or by any other means acceptable to us.

## BENEFICIARY

All benefits are payable to you, if living.  Unless you specify otherwise, any other benefit due for Loss of Life will be paid as follows:

1. At your death, it will be paid to your spouse, if living; otherwise, equally to your then living lawful children, if any, (including step-children and adopted children); otherwise, equally to your then living parents or parent; otherwise to your estate.
2. At the death of any other Covered Person, it will be paid to you, if living; otherwise, as though it were payable under (1) above.

Any payment made under this section will fully release the Company to the extent of the payment.  The beneficiaries designated may be changed in accordance with the Change of Beneficiary Provision, subject to the community property laws in your state of residence.

## CONTINUATION OF COVERAGE

In the event of your death, your covered spouse, if any, shall be deemed the Insured. Otherwise, the coverage will terminate on the next renewal date. If your spouse ceases to be your spouse for reasons other than your death, your spouse will no longer be covered as of the next monthly renewal date.

A child may continue to be covered until the renewal date following his/her 26th birthday if the child is:
1. living in your household or is a full-time or part-time student; and
2. dependent upon you for support and maintenance.

Otherwise, coverage for any dependent child insured under this Certificate shall terminate as of the next renewal date after child's 19th birthday. A child may continue to be covered if upon reaching age 19 the child is and continues thereafter to be, both:

1. incapable of self-sustaining employment by reason of mental retardation or physical handicap; and
2. chiefly dependent upon you for support and maintenance.

You must write and tell us a child meets the above requirements for Continuation of Coverage. We may require periodic proof of continued eligibility for Continuation of Coverage.

## CONVERSION

The covered child or spouse whose coverage ceases may apply for his or her own Certificate within 31 days after coverage ceases. No evidence of insurability will be required. The new Certificate will be issued:

1. on our form at that time with benefits most like but not greater than those of this Certificate; and
2. at the adult rate for the attained age of the person at that time.

The Effective Date of Coverage under the new Certificate will be the same as the Effective Date of Coverage under this Certificate. We will not pay under the new Certificate for any Loss for which benefits have been paid under this Certificate.

## NEWBORN CHILDREN

A child born to you while your Certificate is in force will be covered from the time of birth. You must write and tell us of the birth of a child.

If any children are already covered under this Certificate, the benefit amount will be the same as for other children. If no other child is covered under this Certificate, the benefit will be the amount which would have been issued to children as of the Effective Date of the Certificate.

## GENERAL PROVISIONS

### ENTIRE CONTRACT

Your Certificate is furnished in accordance with and subject to the terms of the Policy. It is not part of the Policy, but it is evidence of the insurance provided under the Policy. The Policy and any attachments form the entire contract of insurance. No agent may change or waive any provisions of the Policy under which this coverage is provided.

### INCONTESTABILITY

We cannot contest this Certificate except for fraud or for not paying premiums.

## CHANGE OF BENEFICIARY

You may change the beneficiary at any time by writing to us at 2700 West Plano Parkway, Plano, Texas, 75075 or to the Policyholder. Once we record the change, it will take effect as of the day you signed the request, subject to any claim payment made before such recording. The consent of the beneficiary is not needed for the change, unless the beneficiary designation was irrevocable.

## PAYMENT OF PREMIUM

All premiums due by the terms of the Policy shall be paid by the Policyholder to our Administrative Office on or prior to the day they are due.

For the first 3 months of coverage, the premium will be paid by the Policyholder.

You are required to contribute 100 percent of the premium payable under this Certificate after the first 3 months. If at any time the Policyholder refuses to accept such contributions and pay the premium for you, you may pay such premium directly to our Administrative Office on or prior to the day it is due.

## GRACE PERIOD

If a premium is not paid when due, the insurance shall be in default. We will allow a 31 day Grace Period to pay each premium after the first one. If a premium is not paid on or before the end of the Grace Period, the insurance shall terminate.

## REINSTATEMENT

Your Certificate will lapse if you do not pay your premium before the end of the Grace Period. If we later accept a premium and do not require an application for reinstatement, that payment will put the Certificate back in force. If we require an application for reinstatement, this Certificate will be put back in force when we approve it. If we do not approve it, this Certificate will be put back in force on the 45th day after the date of application for reinstatement, unless we give you prior written notice of its disapproval.

The reinstated Certificate only covers Loss due to an Injury that is received after the date of reinstatement. In all other respects, you and we have the same rights under the Certificate as were in effect before it lapsed, unless special conditions are added in connection with the reinstatement.

## NOTICE OF CLAIM

Written Notice of Claim must be given to us within 30 days after any Loss covered under the Policy occurs or as soon as possible thereafter. You may give the notice or may have someone do it for you. The notice should include your name and Certificate number as shown on the Schedule Page. Notice should be mailed to us at P. O. Box 869080, Plano, Texas, 75086-9916.

## CLAIM FORMS

When we receive the Notice of Claim, we will send the claimant forms for filing Proof of Loss. If we do not send the forms within 15 days, the claimant can meet the Proof of Loss requirement by providing us with a written statement describing what happened. We must receive this statement within the time given for filing Proof of Loss.

## PROOF OF LOSS

Written Proof of Loss must be given to us within 80 days after the date of the Loss or as soon as possible thereafter. Proof must, however, be furnished no later than one year from the time it is otherwise required, except in the absence of legal capacity.

## MISSTATEMENT OF AGE

If the age of a Covered Person has been misstated, all amounts payable shall be in the amount the premium paid would have bought for the correct age. If, as a result of misstatement, we accept a premium for any period when coverage would not normally have been in effect, then our liability for such period shall be a refund, upon request, of all premiums paid for such period.

## TIME OF PAYMENT OF CLAIMS

We will pay all benefits covered by the Policy as soon as we receive proper written Proof of Loss sufficient to determine liability.

## PAYMENT OF CLAIMS

All benefits are payable to you, if living. Loss of Life benefits for you are payable in accordance with the beneficiary designation in effect at the time of payment. Other benefits will be paid to you. Any other benefits, other than for Loss of Life, unpaid at your death may be paid, at our option, either to your beneficiary or estate.

## PHYSICAL EXAM AND AUTOPSY

At our expense, we shall have the right to examine a Covered Person when and as often as is reasonable while a claim is pending. We may also have an autopsy done in case of death where it is not forbidden by law.

## LEGAL ACTIONS

No action can be brought to recover on the Policy for at least 60 days after written Proof of Loss has been furnished. No such action shall be brought more than 3 years after the date Proof of Loss is required.

# STONEBRIDGE LIFE INSURANCE COMPANY

## SCHEDULE PAGE

This Schedule Page is part of your Certificate.  It supersedes any Schedule Page bearing an earlier Effective Date issued under Master Policy No. _____ 25487 GC346 _____
to DISCOVER BANK _____

CERTIFICATE NUMBER: 88AK8J0692                    EFFECTIVE DATE:   01-15-99

                                              MONTHLY PREMIUM:     $7.95

INSURED:  EDWARD M CASEY
          5608 SW 57TH ST
          OCALA FL 34474-7618

FAMILY COVERAGE:   NO

PREMIUM CONTRIBUTION:     100% AFTER THE FIRST 3 MONTHS

TO PRESENT INQUIRIES, OBTAIN INFORMATION ABOUT COVERAGE, OR RECEIVE ASSISTANCE
IN RESOLVING COMPLAINTS, CALL 1-800-527-0006.

### SCHEDULE OF INSURANCE

| PRINCIPAL SUMS FOR LOSS UNDER: | INSURED | AMOUNT SPOUSE | EACH CHILD |
|---|---|---|---|
| PART I COMMON CARRIER | $1,000,000 | N/A | N/A |
| PART II PRIVATE PASSENGER AUTOMOBILE AND LAND MOTOR VEHICLE ACCIDENTS | $100,000 | N/A | N/A |
| PART III ALL OTHER INJURIES | $25,000 | N/A | N/A |

— STANDARD PREMIUM CLASS —
PREMIUM PAYMENT OPTIONS

| MONTHLY | QUARTERLY | SEMI-ANNUAL | ANNUAL |
|---|---|---|---|
| $7.95 | $23.06 | $45.32 | $87.45 |

Visit us online at www.stonebridgeinsurance.com

## STONEBRIDGE LIFE INSURANCE COMPANY

2700 West Plano Parkway, Plano, Texas 75075-8200

## ENDORSEMENT

Stonebridge Life Insurance Company has issued this Endorsement as a part of the Policy, Certificate or Rider to which it is attached.  This Endorsement takes effect and expires concurrently with the monthly renewal date of the Policy, Certificate or Rider to which it is attached.  This Endorsement is subject to all of the contract provisions that are not in conflict herewith.

Under the heading **EXCLUSIONS** the alcohol exclusion has been deleted and replaced with:

(Injury that) is sustained or contracted in consequence of the Covered Person being Intoxicated;

Under the heading **DEFINITIONS** the following definition has been added or deleted and replaced with:

**INTOXICATED** means, for purposes of this coverage, having a blood alcohol level of .10 percent weight by volume or higher.

The Stonebridge Life Insurance Company has caused this Endorsement to be signed by its Secretary and its President.

Craig D. Vanett

Secretary

President

END ALEXCL

## NOTICE TO FLORIDA RESIDENTS

Should you wish to obtain information about your coverage, need assistance in resolving a complaint, or have any other inquiries, please contact the Company at 1-800-527-0006 .

CMPLT FL



# STONEBRIDGE LIFE
### Insurance Company

Administrative Office | 2700 W. Plano Parkway | Plano | Texas 76075

January 31, 2012

Shaw Law Injury, Tort, & Land Use Litigation
Attention: Stephen Fulton Shaw
PO Box 1241
Silver Springs, FL 34489



**EXHIBIT**
**3**

Reference:          Edward M Casey
Certificate Number:   84AW475129 and 86AK8J0692
Claim Number:        B-961391-01 and B-961392-01.

Dear Mr. Shaw:

Consideration has been given to the request for benefits. Please let me explain our handling.

Under Certificate 84AW475129 Accidental Death Benefit is a benefit paid for any Covered Person who suffers Loss of life as a result of an Injury. Injury means bodily Injury caused by an accident occurring while the insurance is in force resulting: 1. directly and independently of all other causes; and 2. within 90 days after the date of the accident.

Please refer to the Exclusions section of the Certificate, which states in part: "No benefit shall be paid for Loss or Injury that:

7. is due to disease, bodily or mental infirmity; or medical or surgical treatment of these."

Under Certificate 86AK8J0692 the Accidental Death Benefit is a benefit paid for the Covered Person who suffers Loss of Life as the result of an Injury. Injury means bodily Injury which:

1. is caused by an accident which occurs while this insurance is in force under the Policy; and
2. results in Loss covered by the Policy; and
3. creates a Loss due, directly and independently of all other causes, to such accidental bodily Injury. Loss must occur within 90 days after the date of an accident which caused such Injury.

Please refer to the Exclusions section of the certificate, which states in part: "No benefit shall be paid for Injury that:

7. is due to disease, bodily or mental infirmity, or medical or surgical treatment of these; or
8. does not directly and independently of all other causes create a Loss."

According to the Florida Traffic Crash Report Mr. Casey was traveling west bound in the parking lot when he possibly had a physical impairment that may have caused his inability to operated vehicle at the time of crash. The Marion County Fire-Rescue report indicates Mr. Casey was complaining of a "hard time breathing" that started prior to the accident. The Medical Examiner has determined that chronic obstructive pulmonary disease was the contributing cause of death. Based on this information, it appears that Mr. Casey's death was not caused by an accident, directly and independently of all other causes as

required by the certificates.  In consideration of the terms and conditions of the certificates, including the Exclusion listed above, we are sorry, but we are unable to allow benefits.

Our decision is based on the information in our file and our denial should not be considered a waiver of any other Company defenses.  The Company fully reserves any and all rights and defenses available to it now and in the future, and does not waive any such rights or defenses, whether arising under the policy or otherwise.  If you have additional information which you feel may affect our handling, please forward it to us for our review.  Again, we would like to express our sympathy to you and your family your loss.  If you have any questions, please call us on our toll-free number, 1-800-692-5246, ext. 6213.  Our fax number is 972-881-6610 and our e-mail address is claimplano@transamerica.com.

Sincerely,
*Mrs. Darlene Edwards*
Mrs. Darlene Edwards
Claims Administration

## Civil Remedy Notice of Insurer Violations

Filing Number:        204341

### Reason for Notice

Reasons for Notice:

**Claim Denial**

**PURSUANT TO SECTION 624.155, F.S.** please indicate all statutory provisions alleged to have been violated.

**624.155(1)(b)(1)**        Not attempting in good faith to settle claims when, under all the circumstances,
it could and should have done so, had it acted fairly and honestly toward its
insured and with due regard for her or his interests.

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a
third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer
has not provided a copy of the policy to the third party claimant pursuant to written request.

**UNDER CERTIFICATE 84AW475129 ACCIDENTAL DEATH BENEFIT IS A BENEFIT PAID FOR ANY COVERED
PERSON WHO SUFFERS LOSS OF LIFE AS A RESULT OF AN INJURY. INJURY MEANS BODILY INJURY
CAUSE BY AN ACCIDENT OCCURRING WHILE THE INSURANCE IS IN FORCE RESULTING: 1. DIRECTLY
AND INDEPENDENTLY OF ALL OTHER CAUSES;**

**PLEASE REFER TO THE EXCLUSION SECTION OF THE CERTIFICATE, WHICH STATES IN PART: "NO
BENEFIT SHALL BE PAID FOR LOSS OR INJURY THAT: 7. IS DUE TO DISEASE, BODILY OR MENTAL
INFIRMITY; OR MEDICAL OR SURGICAL TREATMENT OF THESE."**

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the
insurer's violation as you understand them at this time.

DFS-10-363
Rev. 11/2007

THE INSURED SUFFERED AN ACCIDENTAL DEATH, NOT OTHERWISE EXCLUDED.

1. STONEBRIDGE ISSUED TO CITIBANK (SOUTH DAKOTA) NA AN ACCIDENTAL DEATH AND DISMEMBERMENT POLICY ON APRIL 3, 1996, POLICY NUMBER 25494 GC303.
2. SUBJECT POLICY INSURED EDWARD M. CASEY FOR UP TO $125,000.00 IN THE EVENT OF AN ACCIDENTAL DEATH IN PRIVATE PASSENGER AUTOMOBILE AND LAND MOTOR VEHICLE.
3. SUBJECT POLICY WAS IN FULL FORCE AND EFFECT AT ALL TIMES RELEVANT HEREIN.
4. EDWARD M. CASEY WAS AN "INSURED" AS DEFINED UNDER THE SUBJECT POLICY.
5. EDWARD M. CASEY WAS A "COVERED PERSON" UNDER THE SUBJECT POLICY.
6. EDWARD M. CASEY WAS INVOLVED IN A MOTOR VEHICLE ACCIDENT ON AUGUST 3, 2011. (HEREAFTER, "THE ACCIDENT.")
7. EDWARD M. DIED ON AUGUST 3, 2011.
8. EDWARD M. CASEY SUSTAINED AN "INJURY" UNDER THE SUBJECT POLICY.
10. EDWARD M. CASEY SUSTAINED A "LOSS" UNDER THE SUBJECT POLICY.
11. EDWARD M. CASEY WAS "OCCUPYING" A VEHICLE AS DEFINED IN SUBJECT POLICY AT THE TIME OF THE TIME OF THE ACCIDENT.
12. EDWARD M. CASEY WAS OCCUPYING A "PRIVATE PASSENGER AUTOMOBILE" AS DEFINED IN SUBJECT POLICY AT THE TIME OF THE TIME OF THE ACCIDENT.
13. ON OR ABOUT DECEMBER, 2011, PLAINTIFF MADE A CLAIM AS A BENEFICIARY OF THE SUBJECT POLICY.
14. ON OR ABOUT JANUARY 31, 2012, DEFENDANT DENIED BENEFITS AND PLAINTIFF'S CLAIM AS A BENEFICIARY.
15. AS GROUNDS FOR SUCH DENIAL, DEFENDANT PROVIDED THE FOLLOWING LANGUAGE FROM THE POLICY: (EXCLUSION SECTION OF THE CERTIFICATE, WHICH STATES IN PART: "NO BENEFIT SHALL BE PAID FOR LOSS OR INJURY THAT: 7. IS DUE TO DISEASE, BODILY OR MENTAL INFIRMITY; OR MEDICAL OR SURGICAL TREATMENT OF THESE.")
16. MR. CASEY'S LOSS AND/OR INJURY WAS NOT DUE TO "DISEASE, BODILY OR MENTAL INFIRMITY; OR MEDICAL OR SURGICAL TREATMENT OF THESE."
17. EDWARD M. CASEY'S LOSS AND/OR INJURY WAS A RESULT OF MULTIPLE BLUNT FORCE TRAUMA TO HIS BODY FROM A MOTOR VEHICLE COLLISION.
18. EDWARD M. CASEY'S FLORIDA DEATH CERTIFICATE INDICATES AS A CAUSE OF DEATH MULTIPLE BLUNT FORCE TRAUMA TO HIS BODY FROM A MOTOR VEHICLE COLLISION.
19. EDWARD M. CASEY'S FLORIDA TRAFFIC CRASH FORM LOSS AND/OR INJURY WAS A RESULT OF COLLISION WITH A FIXED OBJECT (TREE).
20. EDWARD M. CASEY'S AUTOPSY INDICATES THE CAUSE OF DEATH AS MULTIPLE BLUNT FORCE TRAUMA TO HIS BODY FROM A MOTOR VEHICLE COLLISION AND MANNER OF DEATH AS: ACCIDENT.
21. EDWARD M. CASEY, THE INSURED, DIED FROM MULTIPLE BLUNT FORCE TRAUMA TO HIS BODY AS A RESULT OF A MOTOR VEHICLE ACCIDENT, DIRECTLY AND INDEPENDENTLY OF ALL OTHER CAUSES AND NOT DUE TO DISEASE, BODILY OR MENTAL INFIRMITY; OR MEDICAL OR SURGICAL TREATMENT OF THESE.

Comments

| User Id | Date Added | Comment |
|---------|-----------|---------|

DFS-10-363
Rev. 11/2007

## Civil Remedy Notice of Insurer Violations

Filing Number:        204342

Filing Accepted:      5/10/2012

    Warning! Information submitted as part of this civil remedy notice is a public record. Data entered into this form will be displayed on the DFS website for public review. Please DO NOT enter Social Security Numbers, personal medical information, personal financial information or any other information you do not want available for public review.

☑ The submitter hereby states that this notice is given in order to perfect the rights of the person(s) damaged to pursue civil remedies authorized by Section 624.155, Florida Statutes.

### Complainant

| | |
|---|---|
| Name: | GLEN CASEY |
| Street Address: | P O BOX 1241 |
| City, State Zip: | SILVER SPRINGS, FL 34489 |
| Email Address: | |
| Complainant Type: | Third Party |

### Insured

| | |
|---|---|
| Name: | EDWARD CASEY |
| Policy #: | 25467 GC346 |
| Claim #: | B-961392-01 |

### Attorney

| | |
|---|---|
| Name: | STEPHEN F SHAW |
| Street Address: | P O BOX 1241 |
| City, State Zip: | SILVER SPRINGS, FL 34489 |
| Email Address: | STEVE@SHAWLEGALFIRM.COM |

### Notice Against

| | |
|---|---|
| Insurer Type: | Authorized Insurer |
| Name: | STONEBRIDGE LIFE INSURANCE COMPANY |
| Street Address: | |
| City, State Zip: | |

Please identify the person or persons representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations in this notice.

**DARLENE EDWARDS CLAIMS ADMINSTRATION**

Type of Insurance:     Life & Annuity

DFS-10-363
Rev. 11/2007

## Civil Remedy Notice of Insurer Violations

Filing Number:      204342

### Reason for Notice

Reasons for Notice:

**Claim Denial**

PURSUANT TO SECTION 624.155, F.S.  please indicate all statutory provisions alleged to have been violated.

624.155(1)(b)(1)      Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.

Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

UNDER CERTIFICATE 86AK8J0692 THE ACCIDENTAL DEATH BENEFIT IS A BENEFIT PAID FOR THE COVERED PERSON WHO SUFFERS LOSS OF LIFE AS A RESULT OF AN INJURY. INJURY MEANS BODILY INJURY WHICH:

1. IS CAUSED BY AN ACCIDENT OCCURRING WHILE THIS INSURANCE IS IN FORCE UNDER THE POLICY; AND, 2. RESULTS IN LOSS COVERED BY THE POLICY; AND, 3. CREATES A LOSS DUE, DIRECTLY AND INDEPENDENTLY OF ALL OTHER CAUSES, TO SUCH ACCIDENTAL BODILY INJURY. LOSS MUST OCCUR WITHIN 90 DAYS AFTER THE DATE OF AN ACCIDENT WHICH CAUSED SUCH INJURY.

PLEASE REFER TO THE EXCLUSION SECTION OF THE CERTIFICATE, WHICH STATES IN PART: NO BENEFIT SHALL BE PAID FOR INJURY THAT: 7. IS DUE TO DISEASE, BODILY OR MENTAL INFIRMITY; OR MEDICAL OR SURGICAL TREATMENT OF THESE; OR 8. DOES NOT DIRECTLY AND INDEPENDENTLY OF ALL OTHER CAUSES CREATE A LOSS.

To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time.

DFS-10-363
Rev. 11/2007

THE INSURED SUFFERED AN ACCIDENTAL DEATH, NOT OTHERWISE EXCLUDED.

1. STONEBRIDGE ISSUED TO DISCOVER BANK AN ACCIDENTAL DEATH AND DISMEMBERMENT POLICY ON JANUARY 15, 1999, MASTER POLICY NUMBER 25467 GC346 AND CERTIFICATE NO.: 86AK8J0692.
2. SUBJECT POLICY INSURED EDWARD M. CASEY FOR UP TO $100,000.00 IN THE EVENT OF AN ACCIDENTAL DEATH IN PRIVATE PASSENGER AUTOMOBILE AND LAND MOTOR VEHICLE.
3. SUBJECT POLICY WAS IN FULL FORCE AND EFFECT AT ALL TIMES RELEVANT HEREIN.
4. EDWARD M. CASEY WAS AN "INSURED" AS DEFINED UNDER THE SUBJECT POLICY.
5. EDWARD M. CASEY WAS A "COVERED PERSON" UNDER THE SUBJECT POLICY.
6. EDWARD M. CASEY WAS INVOLVED IN A MOTOR VEHICLE ACCIDENT ON AUGUST 3, 2011. (HEREAFTER, "THE ACCIDENT.")
7. EDWARD M. DIED ON AUGUST 3, 2011.
8. EDWARD M. CASEY SUSTAINED AN "INJURY" UNDER THE SUBJECT POLICY.
10. EDWARD M. CASEY SUSTAINED A "LOSS" UNDER THE SUBJECT POLICY.
11. EDWARD M. CASEY WAS "OCCUPYING" A VEHICLE AS DEFINED IN SUBJECT POLICY AT THE TIME OF THE TIME OF THE ACCIDENT.
12. EDWARD M. CASEY WAS OCCUPYING A "PRIVATE PASSENGER AUTOMOBILE" AS DEFINED IN SUBJECT POLICY AT THE TIME OF THE TIME OF THE ACCIDENT.
13. ON OR ABOUT DECEMBER, 2011, PLAINTIFF MADE A CLAIM AS A BENEFICIARY OF THE SUBJECT POLICY.
14. ON OR ABOUT JANUARY 31, 2012, DEFENDANT DENIED BENEFITS AND PLAINTIFF'S CLAIM AS A BENEFICIARY.
15. AS GROUNDS FOR SUCH DENIAL, DEFENDANT PROVIDED THE FOLLOWING LANGUAGE FROM THE POLICY: (EXCLUSION SECTION OF THE CERTIFICATE, WHICH STATES IN PART: "NO BENEFIT SHALL BE PAID FOR LOSS OR INJURY THAT: 7. IS DUE TO DISEASE, BODILY OR MENTAL INFIRMITY; OR MEDICAL OR SURGICAL TREATMENT OF THESE.")
16. MR. CASEY'S LOSS AND/OR INJURY WAS NOT DUE TO "DISEASE, BODILY OR MENTAL INFIRMITY; OR MEDICAL OR SURGICAL TREATMENT OF THESE."
17. EDWARD M. CASEY'S LOSS AND/OR INJURY WAS A RESULT OF MULTIPLE BLUNT FORCE TRAUMA TO HIS BODY FROM A MOTOR VEHICLE COLLISION.
18. EDWARD M. CASEY'S FLORIDA DEATH CERTIFICATE INDICATES AS A CAUSE OF DEATH MULTIPLE BLUNT FORCE TRAUMA TO HIS BODY FROM A MOTOR VEHICLE COLLISION.
19. EDWARD M. CASEY'S FLORIDA TRAFFIC CRASH FORM LOSS AND/OR INJURY WAS A RESULT OF COLLISION WITH A FIXED OBJECT (TREE).
20. EDWARD M. CASEY'S AUTOPSY INDICATES THE CAUSE OF DEATH AS MULTIPLE BLUNT FORCE TRAUMA TO HIS BODY FROM A MOTOR VEHICLE COLLISION AND MANNER OF DEATH AS: ACCIDENT.
21. EDWARD M. CASEY, THE INSURED, DIED FROM MULTIPLE BLUNT FORCE TRAUMA TO HIS BODY AS A RESULT OF A MOTOR VEHICLE ACCIDENT, DIRECTLY AND INDEPENDENTLY OF ALL OTHER CAUSES AND NOT DUE TO DISEASE, BODILY OR MENTAL INFIRMITY; OR MEDICAL OR SURGICAL TREATMENT OF THESE.

| Comments | | |
|----------|---|---|
| User Id | Date Added | Comment |

**U.S. Postal Service**
**CERTIFIED MAIL   RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $1.30 | 0690 |
| Certified Fee | $2.95 | 05 |
| Return Receipt Fee (Endorsement Required) | $2.35 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ 6.60 | 05/11/2012 |

7005 1820 0006 0649 0349

Sent To  Darlene Edwards
Street Apt No. or PO Box No.  2700 W Plano Pkwy
City, State, ZIP+4  Plano Tx 75075

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Darlene Edwards
Stonebridge
2700 W Plano Pkwy
Plano Tx 75075

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X   STONEBRIDGE LIFE    ☐ Agent
     INSURANCE COMPANY   ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
   MAY 1 5 2012

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

RECEIVED

3. Service Type
☐ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)     7005 1820 0006 0649 0349

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

EXHIBIT
5